IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

MONICA C. SMITH,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C15-0103

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  FACTUAL AND PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . 4

IV.  CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    A.   ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . . . . . . 5
    B.   Objections Raised By Claimant . . . . . . . . . . . . . . . . . . . . . . . . 7
        1.   Dr. Stientjes' Opinions . . . . . . . . . . . . . . . . . . . . . . . . . 8
        2.   RFC and Hypothetical Question . . . . . . . . . . . . . . . . . . . . 11

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

VI.   ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Monica C. Smith on September 29, 2015, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title XVI supplemental

security income ("SSI") benefits.[1] Smith asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her SSI benefits. In the alternative, Smith requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014) (quoting *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006)). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2011)).

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision

---

[1] On January 6, 2016, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

2

"extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Draper v. Colvin*, 779 F.3d 556, 559 (8th Cir. 2015) ("'If substantial evidence supports the Commissioner's conclusions, th[e] court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome.' *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)."); *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

## III. FACTUAL AND PROCEDURAL BACKGROUND

Smith was born in 1987. She completed the eighth grade and dropped out of school in the ninth grade. While in school, she was enrolled in special education classes. She has not earned a GED. In the past she worked part-time, generally for short periods of time, as a fast foods worker and a telemarketer.

Smith filed her application for SSI benefits on February 15, 2012, alleging disability due to right knee arthritis, back pain, high blood pressure, and long QT syndrome (a heart rhythm condition). She alleged she became disabled on December 1, 2011.[2] Her application was denied upon initial review, and on reconsideration. On October 9, 2013, Smith appeared via video conference with her attorney before Administrative Law Judge ("ALJ") Eric S. Basse for an administrative hearing. In a decision dated January 29, 2014, the ALJ denied Smith's claim. The ALJ determined Smith was not disabled and not entitled to SSI benefits because she was functionally capable of performing work that exists in significant numbers in the national economy. Smith appealed the ALJ's decision. On July 31, 2015, the Appeals Council denied Smith's request for review. Consequently, the ALJ's January 29, 2014 decision was adopted as the Commissioner's final decision.

On September 29, 2015, Smith filed the instant action for judicial review. A briefing schedule was entered on December 28, 2015. On March 29, 2016, Smith filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that she is not disabled and that she is functionally capable of performing other work that exists in significant numbers in the national economy. On April 26, 2016, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision.

---

[2] SSI benefits, however, are not payable prior to the month in which the application was filed. *See* 20 C.F.R. § 416.335. Therefore, the relevant time period in this case began on January 23, 2012, the date Smith protectively filed her application for SSI benefits.

4

Additionally, on March 13, 2016, both parties together filed a joint statement of facts addressing Smith's background, the case's procedural history, testimony from the administrative hearing, and Smith's medical history. *See* docket number 16. The parties' joint statement of facts is hereby incorporated by reference. Further discussion of pertinent facts will be addressed, as necessary, in the Court's consideration of the legal issues presented.

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined Smith was not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014); *Young v. Astrue*, 702 F.3d 489, 490-91 (8th Cir. 2013). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014) (citing *King v. Astrue*, 564 F.3d 978, 979 n. 2 (8th Cir. 2009)); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. § 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ

> determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012) (quoting *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945(a)(1); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)); 20 C.F.R. § 416.945.

The ALJ applied the first step of the analysis and determined Smith had not engaged in substantial gainful activity since January 23, 2012. At the second step, the ALJ

concluded from the medical evidence Smith had the following severe impairments: degenerative disc disease, patella femoral syndrome, anti-social, paranoid, and borderline personality disorder, substance abuse in remission, and obesity. At the third step, the ALJ found Smith did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Smith's RFC as follows:

> [Smith] has the residual functional capacity to perform light work[.] . . . [Smith] can lift and carry 20 pounds occasionally and 10 pounds frequently. She is able to walk and stand for 6 hours in an 8-hour day and sit for up to 6 hours in an 8-hour day. [She] can occasionally climb, balance, stoop and crouch. However, she can never climb ladders, ropes or scaffolds and can never kneel or crawl. In addition, she should have no exposure to cold or hazards. She can frequently use foot controls with her right lower extremity. [She] is limited to simple, routine repetitive tasks that require no interaction with the general public and co-worker[s], and only occasional interaction with supervisors. She should not be required to read instructions, write reports, or make mathematical calculations.

(Administrative Record at 23-24.) Also at the fourth step, the ALJ determined Smith has no past relevant work. At the fifth step, the ALJ determined based on her age, education, previous work experience, and RFC, Smith could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded Smith was not disabled.

### B. *Objections Raised By Claimant*

Smith argues the ALJ erred in two respects. First, Smith argues the ALJ failed to properly evaluate the opinions of Dr. Harlan Stientjes, Ph.D., a consultative examining psychologist. Second, Smith argues both the ALJ's RFC assessment and the hypothetical questions provided to the vocational expert at the administrative hearing are flawed and not supported by substantial evidence.

7

## 1. Dr. Stientjes' Opinions

Smith argues the ALJ failed to properly consider and weigh the opinions of Dr. Stientjes, a consultative examining psychologist who performed a psychological evaluation for Smith. Smith concludes that this matter should be remanded for further consideration of the opinions of Dr. Stientjes.

On April 18, 2012, at the request of Disability Determination Services ("DDS"), Dr. Stientjes performed a psychological evaluation for Smith. In reviewing Smith's background, Dr. Stientjes noted she had limited education and dropped out of school after the eighth grade. She reported that she attempted to earn a GED, but it was "too much." Her employment "primarily consisted of multiple short-term (2 weeks average) work in various food service settings and telemarketing, generally ending in outbursts by [Smith]."[3] Dr. Stientjes administered the Beck Depression Inventory II, and Smith endorsed severe pessimism, agitation, irritability, difficulty concentrating, loss of energy, and fatigue. Dr. Stientjes also administered the Beck Anxiety Inventory which rated Smith's inability to relax as severe, and fear of the worst happening and nervousness as moderate. During his interview with Smith, Dr. Stientjes observed she is "extremely aggressive, both verbally and physically. . . . Anger, impatience, and irritation are palpable in the interview."[4] Dr. Stientjes also found that Smith could "read acceptably, had vague inferential comprehension, and no content recall. . . . With considerable prompting, she repeated three words as requested and later remembered two of them. . . . She made errors in repeating a sentence and made two errors in following a 3-step instruction."[5] Following his examination of Smith, Dr. Stientjes diagnosed her with major depressive disorder (untreated), cocaine dependence in remission, anti-social personality disorder,

---

[3] Administrative Record at 309.

[4] *Id.* at 310.

[5] *Id.*

8

paranoid personality disorder, and borderline personality disorder. Dr. Stientjes opined Smith would have the following work difficulties:

> [Smith] is extremely inattentive and resistant to external instructions. She says she finds it demeaning when supervisors tell her what to do when she already knows. [Smith] does not like interaction with others and would prefer to stay at home by herself. Safety judgment is marginal.

(Administrative Record at 311.) Dr. Stientjes concluded Smith's "[p]rospects for sustained full-time gainful employment are grim."[6]

In considering medical evidence, an ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. §§ 404.1527(c), 416.927(c). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese v. Astrue*, 552 F.3d 728, 731 (8th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

In considering a physician's RFC assessment, an ALJ is not required to give controlling weight to the physician's assessment if it is inconsistent with other substantial evidence in the record. *Strongson*, 361 F.3d at 1070; *see also Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or

---

[6] Administrative Record at 311.

9

contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Social Security Ruling, 96-8p (July 2, 1996).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In his decision, the ALJ addressed Dr. Stientjes' opinions as follows:

> I have considered the opinion of the physician at the consultative examination dated April 18, 2012 that noted [Smith's] prospects from employment were grim and suggested the need for a payee (Exhibit 7[F]). While [Smith] alleged numerous symptoms including anger, irritation and problems with concentration and memory they are inconsistent with information in ongoing mental status examinations and observations noted at the hearing. Therefore, I afford this opinion minimum weight for several reasons. Specifically, I note at the hearing [Smith] appeared to demonstrate difficulty recalling past work but she was able to recite her medication and manage her medication regimen by setting her alarm clock, which indicates an ability to perform at least simple tasks. Moreover, her inattention and resistance to instructions suggest more of a problem with her personality and not wanting to be told what to do rather than a cognitive

> dysfunction. In addition, [Smith] was seeking no treatment
> during the time of this examination. When in treatment
> symptoms improve. I also note findings from Grant Wood that
> note [Smith] is more capable than she appears but she lets her
> behavior get in the way (Exhibit 1F). Finally, ability to work
> is an opinion reserved to the Commissioner.

(Administrative Record at 28-29.) Additionally, in considering state agency psychological consultants, the ALJ determined:

> The State agency psychological consultants opined [Smith] had
> mild limitations in activities of daily living and moderate
> limitations in social functioning and concentration, and noted
> [Smith] was capable of performing simple work. This is
> consistent with information in mental status examinations noted
> above, and continued improvement on medication and
> treatment as well as [Smith's] level of daily activities.
> Therefore, I afford the opinions significant weight.

(Administrative Record at 29.)

Having reviewed the entire record, and considered the ALJ's discussion of the objective medical evidence, and review of Smith's treatment history, the Court finds the ALJ properly considered and weighed the opinion evidence provided by Dr. Stientjes. Specifically, the ALJ fully explained the reasons for the weight given to Dr. Stientjes' opinions, and also addressed inconsistencies in Dr. Stientjes' opinions where they differed from the record as a whole. Therefore, the Court concludes the ALJ properly considered and applied the factors for evaluating a consultative examiner's opinions, and properly granted "minimal" weight to Dr. Stientjes' opinions. *See Wiese*, 552 F.3d at 731. Accordingly, even if inconsistent conclusions could be drawn on this issue, the ALJ's conclusions should be upheld because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2. *RFC and Hypothetical Question*

Smith argues that both the ALJ's RFC assessment and the hypothetical questions provided to the vocational expert at the administrative hearing are flawed. Specifically,

Smith argues the ALJ's RFC assessment and hypothetical questions to the vocational expert are incomplete because they do not properly account for all of her impairments and functional limitations. For example, Smith asserts the opinions of consultative examining medical source Dr. Robert J. Schultes, M.D., do not support the ALJ's RFC determination that she is capable of light work. Thus, Smith contends the ALJ's RFC assessment and hypothetical questions are not supported by substantial evidence in the record. Smith maintains this matter should be remanded for a new RFC determination based on a fully and fairly developed record, and to allow the ALJ to provide the vocational expert with a proper and complete hypothetical question.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803. Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*,

435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Furthermore, hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

On April 26, 2012, Smith was referred by DDS to Dr. Schultes for a physical evaluation. Smith reported that her primary physical complaints were right knee arthritis, right leg pain (knee to ankle), and mid-back pain. Upon examination, Dr. Schultes diagnosed Smith with chronic right knee pain, chronic low back pain, history of patellar syndrome, history of long QT syndrome, decreased peak expiratory flow rate probably secondary to chronic obstructive pulmonary disease, and decreased range of motion and strength. As for functional abilities, Dr. Schultes incorporated the functional abilities reported to him by Smith:

> [Smith] states that she can do the following. She can lift 20 pounds 3 hours per day secondary to back pain. She can carry 10 pounds 5 hours per day secondary to back and knee pain. She can stand 3 hours per day secondary to knee and back pain. She can move about 4 hours per day secondary to knee

13

and back pain. She can walk 2 hours per day secondary to
knee pain. She can sit 8 hours per day. She can stoop 2 hours
per day. She cannot do any climbing secondary to knee pain.
She can not do any kneeling secondary to knee pain. She can
not do any crawling secondary to knee pain. She can handle
objects, see, hear, speak, and travel 8 hours per day. She can
not work around dust secondary to sneezing and breathing
problems. She can not work around fumes secondary to
shortness of breath. She can not work in temperature below
50 degrees Fahrenheit secondary to pain. She has no problems
[with] other hazards.

(Administrative Record at 314.)

In his decision, the ALJ fully addressed Dr. Schultes' consultative examination findings and opinions.[7] For example, the ALJ noted "[i]nformation in her physical examination revealed some limitations in range of motion but motor strength was 5/5 and gait was normal. In addition, [Smith] did not present with an assistance device nor was there mention of a need for one."[8] The ALJ also noted the record included Smith's treatment at Linn Community Care in July 2012 for back and knee pain. According to the treatment records, Ibuprofen controlled her pain. The ALJ also noted "[i]nformation in the physical examination did reveal some tenderness in the spine, however her lower back examination was normal. [Smith] also had full joint motion in all extremities with no evidence of edema, erythema, or crepitation's in the knees."[9] Overall, the ALJ determined:

the objective evidence does not support the degree of limitation
alleged by [Smith]. Information in physical examinations
revealed [Smith] has a normal gait, and intact motor functions
of 5/5. In addition, treatment notes from Linn Community

---

[7] Administrative Record at 25-26.

[8] *Id.*

[9] *Id.* at 26.

14

Care revealed that her lower back examination was essentially normal.

(Administrative Record at 26-27.) Lastly, the ALJ noted Smith claimed she sometimes uses a knee brace and used a back brace until she lost it. However, the ALJ found "no indication in treatment notes that a brace or any other assistance device is medically necessary."[10] Smith also did not seek a replacement for the brace she lost. Finally, the ALJ noted "while [Smith] alleged limitations in walking, sitting, kneeling, and standing, her physician advised her to continue exercising indicating that light activity was something she could handle."[11]

Having reviewed the entire record, and considered the ALJ's discussion of the objective medical evidence, and review of Smith's treatment history, the Court finds the ALJ properly considered and addressed the opinion evidence provided by Dr. Schultes. Specifically, the ALJ fully explained and addressed inconsistencies in Dr. Schultes' opinions where they differed from the record as a whole. Therefore, the Court concludes the ALJ properly considered and applied the factors for evaluating Dr. Schultes' opinions, a consultative examining source. *See Wiese*, 552 F.3d at 731. Accordingly, even if inconsistent conclusions could be drawn on this issue, the ALJ's conclusions should be upheld because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

Turning to the ALJ's overall RFC assessment, the ALJ's decision demonstrates that he thoroughly addressed and considered Smith's medical history and treatment for her

---

[10] Administrative Record at 27.

[11] *Id.*

15

complaints.[12] For example, the ALJ thoroughly addressed Smith's, obesity,[13] mental health treatment that showed by November 2012 (within one year of the alleged onset date) Smith was "doing very well,"[14] and relatively minimal knee and back pain/difficulties as discussed above.[15] Additionally, the ALJ properly considered and thoroughly discussed Smith's subjective allegations of disability in making his overall disability determination, including determining Smith's RFC.[16]

Therefore, having reviewed the entire record, the Court determines the ALJ properly considered Smith's medical records, observations of treating physicians, and Smith's own description of her limitations in making the ALJ's RFC assessment for Smith.[17] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. Accordingly, Smith's assertion that the ALJ's RFC assessment is flawed is without merit.

Similarly, having reviewed the entire record, the Court, again, finds the ALJ thoroughly considered and discussed both the medical evidence and Smith's testimony in

---

[12] *See id.* at 24-29 (providing a thorough discussion of Smith's overall physical and mental health medical history and treatment).

[13] *Id.* at 24.

[14] Administrative Record at 25-29.

[15] *Id.*

[16] *Id.* at 26-28 (providing a thorough discussion of Smith's subjective allegations of disability).

[17] *Id.* at 24-29 (providing thorough discussion of the relevant evidence for making a proper RFC determination).

determining Smith's impairments and functional limitations.[18] The Court further determines the ALJ's findings and conclusions are supported by substantial evidence on the record as a whole. Because the hypothetical question posed to the vocational expert by the ALJ was based on the ALJ's findings and conclusions, the Court determines the ALJ's hypothetical question properly included those impairments which were substantially supported by the record as a whole. *See Goose*, 238 F.3d at 985; *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004) (an ALJ need only include those work-related limitations that he or she finds credible). Therefore, the ALJ's hypothetical question was sufficient.

## V. CONCLUSION

The Court finds the ALJ properly evaluated Dr. Stientjes' opinions. The Court also finds the ALJ considered the medical evidence as a whole, and made a proper RFC determination based on a fully and fairly developed record, including proper consideration of Dr. Schultes' opinions. The ALJ's hypothetical questions to the vocational expert were also sufficient because they properly included those impairments and functional limitations substantially supported by the record as a whole. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VI. ORDER

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 11th day of August, 2016.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA

---

[18] *See id.*